IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| EDDIE FERNANDEZ, | § | |
| Plaintiff, | § | |
| v. | § | NO. EP-14-CV-0154-LS |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security | § | |
| Administration, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial before a United States Magistrate Judge, the case was transferred to this Court pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules for the Western District of Texas, to conduct any and all further proceedings in the cause, including trial and entry of judgment. [ECF No. 10]

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. § 1381 *et seq*. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

Plaintiff was born in August 1987, completed the 9th grade, and was enrolled in special education classes in El Paso, Texas. (R:26, 30, 137)[1] He is able to communicate in English though his primary language is Spanish (R:30, 136, 270) He has worked with his father delivering ice to retailers. (R:29, 42) Plaintiff alleges disability beginning on March 1, 2009, due to his mental

---

[1] Reference to the Administrative Record, contained in Docket Entry Number 16, is designated by an "R" followed by the page number(s).

conditions and learning disabilities. (R:119, 137)

## II. ISSUES

Plaintiff presents the following issues for review:

1. Whether the final decision of the Commissioner denying benefits is supported by substantial evidence; and

2. Whether the Commissioner applied an incorrect legal standard in determining that Plaintiff was not disabled.

Plaintiff contends that the Administrative Law Judge's residual functional capacity ("RFC") determination is not supported by substantial evidence because she failed to properly consider all the limitations resulting from Plaintiff's mental impairments, such as his difficulties with attending and completing tasks, his difficulties with acquiring and using information, and his need for close supervision. Plaintiff contends that the case should be reversed, or in the alternative, remanded for further administrative proceedings.

## III. PROCEDURAL HISTORY

In October 2010, Plaintiff filed an application for SSI benefits with an alleged onset date of March 1, 2009. (R:21, 119) His applications were denied initially and upon reconsideration. (R:21, 56, 66) Upon Plaintiff's written request for a hearing, an administrative hearing was held on September 20, 2012. (R:21, 39-53, 71) Administrative Law Judge ("ALJ") Ann Farris issued a decision on October 30, 2012, finding Plaintiff not disabled, and denying benefits. (R:21-32) The Appeals Council denied Plaintiff's request for review on January 30, 2014. (R:4-11)

Plaintiff filed the instant cause on April 25, 2014. [ECF No. 1] Upon the granting of Plaintiff's motion to proceed in forma pauperis, his complaint was filed. [ECF Nos. 4, 5] Defendant filed an answer and a transcript of the administrative proceedings on July 1, 2014. [ECF

Nos. 15, 16] Plaintiff filed a brief in support of his claims on October 30, 2014. [ECF No. 21] On November 25, 2014, Defendant filed a brief in support of the Commissioner's decision denying benefits. [ECF No. 22] The case was transferred to United States Magistrate Judge Leon Schydlower on December 8, 2015. [ECF No. 23]

## IV. DISCUSSION

### A. STANDARD OF REVIEW

The court's review of the Commissioner's decision is limited to two inquiries: 1) whether the decision is supported by substantial evidence on the record as a whole; and 2) whether the Commissioner applied the proper legal standard. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Masterson*, 309 F.3d at 272. The Commissioner's findings will be upheld if supported by substantial evidence. *Id.*

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Id.* Conflicts in the evidence are for the Commissioner and not for the courts to resolve. *Perez*, 415 F.3d at 461.

### B. EVALUATION PROCESS

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the Social Security Act as well as numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. A claimant bears the burden of proving disability, which is defined as any medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a); *Masterson*, 309 F.3d at 271. The ALJ

evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) whether the impairment prevents the claimant from performing his past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 416.920.

The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920. However, if the claimant has shown he cannot perform his previous work, the burden shifts to the Commissioner to show that there is other work available that the claimant can perform. *Crowley v. Apfel*, 197 F.3d 194, 198 (5th Cir. 1999). If the Commissioner establishes other gainful employment, the burden shifts back to the claimant to prove he is unable to perform the alternate work. *Id.*

The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett*, 67 F.3d at 564. "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Id.*

The mere presence of an impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Rather, it is Plaintiff's burden to establish disability and to provide or identify medical and other evidence of his impairments and how they affect his ability to work. *See* 20 C.F.R. § 416.912(c). His own subjective complaints, without objective medical evidence of

record, are insufficient to establish disability. *See* 20 C.F.R. §§ 416.908, 416.928, 416.929.

### C. THE ALJ'S DECISION

In the present case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 20, 2010, the application date. (R:23) She determined that Plaintiff had severe impairments consisting of borderline intellectual functioning, personality traits, and alcohol abuse. (R:23) However, she found that none of Plaintiff's impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R:24)

In assessing whether the severity of Plaintiff's mental impairments met or medically equaled the listing of impairments, the ALJ considered the category of impairments for organic mental disorders in Section 12.02. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02; *see also* 20 C.F.R. §§ 416.920a(c)-(d). Pursuant to Section 12.02, the ALJ rated the degree of Plaintiff's limitations in four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation. She found that Plaintiff had no restrictions in daily living activities and social functioning, mild difficulties with concentration, persistence, or pace, and no episodes of decompensation. (R:24-25) After comparing the medical records and the degree of functional limitations to the criteria of Section 12.02, the ALJ concluded that Plaintiff's degree of functional limitation did not meet the requisite level of severity of an organic mental disorder for purposes of establishing disability. (R:24-25) *See* 20 C.F.R. §§ 416.920(a),(d),(e), 416.920a(b)-(d).

The ALJ next determined that Plaintiff retained the functional capacity to perform a full range of work but with the following nonexertional limitations: performing only simple, routine tasks with reasoning level one; reading a simple list but not detailed or complex instructions; and

filling out simple logs, but not writing reports. (R:25)

At the next step of the disability analysis, the ALJ concluded that Plaintiff had no past relevant work. (R:30) Then, considering Plaintiff's age, education, work experience, and RFC in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and relying on vocational expert ("VE") testimony, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (R:30-31) Consequently, the ALJ concluded that Plaintiff was not disabled from his alleged onset date through the date of the ALJ's decision. (R:31-32)

### D. THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Residual functional capacity is the most an individual can still do despite his limitations. 20 C.F.R. § 416.945. The responsibility to determine the Plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ must determine a claimant's abilities despite his physical and mental limitations based on the relevant evidence in the record. *Perez*, 415 F.3d at 461-62. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 416.929, 416.945. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 n.1 (5th Cir. 2001).

#### 1. Medical Evidence

The medical evidence of record demonstrates the following:

In 2003, Plaintiff was examined by Dr. Lawrence Burciaga for a psychological evaluation for the El Paso Independent School District. (R:222-26, 247, 269) Dr. Burciaga diagnosed him with oppositional defiant disorder, unspecified learning disability disorder, communication

disorder, and borderline intellectual functioning. He assessed a Global Assessment of Functioning (GAF) rating of 60.[2]

On May 18, 2007, Plaintiff underwent a psychiatric examination by Dr. Arthur Ramirez. (R:253-55)[3] Plaintiff reported to Dr. Ramirez that during the summer he worked for his father delivering ice to various stores, and that during the winter he worked for his sister, who is an insurance agent, doing custodial work. Dr. Ramirez found Plaintiff's concentration to be moderately diminished, his recent memory to be fair, and his remote memories poor. Plaintiff could not perform simple arithmetic calculations. His insight and judgment were poor. Dr. Ramirez diagnosed him with moderately severe mental retardation. He concluded that Plaintiff had diminished mental capacity and would need to interact in simple and concrete terms.

Plaintiff underwent a consultative mental examination on February 19, 2008, by Dr. Peter Fernandez. (R:245-48) Plaintiff denied a history of psychiatric or substance abuse treatment, and denied taking any medications. He was independent in his dressing, bathing, feeding, shopping, and washing dishes/clothing. He occasionally drove a vehicle though he never obtained a driver's license. During the examination, Plaintiff had difficulty reading in English, but performed better in

---

[2]   A GAF rating of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A GAF rating of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well. See Am. Psychiatric Ass'n, DIAGNOSTIC and STATISTICAL MANUAL of MENTAL DISORDERS 34 (4th ed. Text Revision 2000) ("DSM-IV-TR"). However, it is noted that in the updated version of the DSM, the American Psychiatric Association no longer recommends the use of the GAF scale as a diagnostic tool for assessing a patient's functioning due to "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." See Am. Psychiatric Ass'n, DIAGNOSTIC and STATISTICAL MANUAL of MENTAL DISORDERS 16 (5th ed. 2013) ("DSM-V").

[3]   The evaluation was performed in order to determine Plaintiff's competency for trial in criminal proceedings pending against Plaintiff at that time. Dr. Ramirez concluded that Plaintiff was marginally competent to stand trial. (R:255) Plaintiff was sentenced to a term of probation, which has since been discharged. See United States v. Eddie Fernandez, EP-07-CR-820-KC (W.D. Tex. Jun. 10, 2009) (order for discharge from supervision).

Spanish. Dr. Fernandez noted that the examination was conducted in Spanish which was Plaintiff's preference. Plaintiff required occasional repetition of questions due to mild weakness in abstract-reasoning. He was able to perform simple written arithmetic problems.

Dr. Fernandez found that Plaintiff demonstrated adequate mental control, written and mental arithmetic, visual recall, verbal repetition, written expression, constructional praxis,[4] and practical judgment. However, he determined that Plaintiff demonstrated weak spelling, weak verbal learning, mildly weak verbal recall, and mildly weak abstract reasoning. Plaintiff also demonstrated weak verbal repetition and written expression in English. Despite his mother stating that he often was noncompliant or angry, Plaintiff did not exhibit any such behavior during the interview and was cooperative and happy. Dr. Fernandez diagnosed him with phonological (articulation) disorder, an unspecified cognitive disorder, and nonconforming personality traits, with a history of adult antisocial behavior and a history of borderline intellectual functioning. He concluded that Plaintiff was moderately impaired in social functioning and moderately to seriously impaired in vocational functioning.

On March 23, 2010, Plaintiff underwent a psychiatric evaluation by Dr. David Briones.[5] (R:249-52) Plaintiff denied any psychiatric symptoms, or any suicidal or homicidal ideations, and was not on any medications. His concentration was poor. He had trouble with immediate recall and had very poor remote recall. His intellectual functioning was estimated to be below average, with

---

[4]   While praxia means the performance of an action, constructional apraxia refers to an inability to copy simple drawings or to reproduce patterns created with building blocks. *Dorland's Illustrated Medical Dictionary*, 118, 1448 (29th ed. 2000).

[5]   Dr. Briones generated a summary report of the psychiatric evaluation for the criminal proceedings pending against Plaintiff at that time. The criminal charges were subsequently dismissed. *See United States v. Eddie Fernandez*, EP-09-CR-3498-FM (W.D. Tex. May 27, 2010) (order of dismissal signed by district court).

fair judgment and insight. Dr. Briones assessed him with mild to moderate mental retardation, alcohol substance abuse, and an unspecified cognitive disorder. He concluded that Plaintiff did not have a fully rational or factual understanding of the legal proceedings against him, and did not have a sufficient ability to consult with his attorney and assist in his own defense with a reasonable degree of rational understanding. Dr. Briones recommended that Plaintiff would benefit from having a legal guardian.

A consultative psychological examination was conducted on February 8, 2011, by Dr. James Schutte. (R:268-71) Plaintiff was evaluated for disability based on alleged learning disabilities and mental illness. Plaintiff reported that he did not have any trouble getting along with others at work. He also denied having any trouble concentrating or remembering tasks at work. He denied having any feelings of depression or anxiety, denied any substance abuse, and denied any memory or concentration problems. He was not taking any medications. Upon examination, Plaintiff's cognitive functions appeared somewhat limited, but he was alert and responsive to his surroundings. His speech was clear and comprehensible with no apparent deficits. His long-term memory did not seem grossly impaired. His attention and concentration appeared adequate.

Intelligence test results indicated borderline intellectual functioning with mild to severe deficits in English reading, spelling, and math skills. However, because Plaintiff was Spanish-language dominant, Dr. Schutte determined that there did not appear to be a learning disorder. With regard to adaptive behavior, Plaintiff reported being able to care for himself with some limitation, being able to get along with others, and feeling able to work. He could follow simple storylines, follow simple instructions, and carry out simple tasks. Dr. Schutte assessed him with borderline intellectual functioning with a GAF score of 55. He determined that Plaintiff had

9

some reported limitations in home living and functional academics, that he could understand the meaning of filing for benefits, and could manage benefit payments. Dr. Schutte concluded that Plaintiff's ability to reason seemed moderately impaired and that his ability to make occupational, personal, and social adjustments seemed moderately impaired due to his borderline intellectual functioning.

On February 23, 2011, a state agency physician, Matthew Snapp, Ph.D., completed a Psychiatric Review Technique form (R:276-88) and a Mental Residual Functional Capacity form. (R:290-92) Dr. Snapp determined that Plaintiff had mild limitations in the areas of daily living activities and in maintaining social functioning, and moderate limitations in maintaining concentration, persistence, or pace. He found no episodes of decompensation. Dr. Snapp further assessed Plaintiff as not significantly limited in the ability to remember locations and work-like procedures, to understand and remember short and simple instructions, and to carry out short and simple instructions. He found Plaintiff not significantly limited in the ability to sustain an ordinary routine without special supervision, to work in coordination with others, and to make simple work-related decisions. He further found Plaintiff moderately limited in the ability to maintain attention and concentration for extended periods, and to respond appropriately to changes in the work setting. Dr. Snapp's assessments were affirmed by state agency physician Susan Posey on April 19, 2011. (R:294, 296)

On September 18, 2012, Dr. Jaime Arbona completed a psychiatric evaluation (R:316-19) and Medical Source Statement. (R:314-15) Dr. Arbona considered reports from Plaintiff's mother that Plaintiff had exhibited outbursts of anger when taking instructions from his father, or out of frustration when playing baseball, or when other students teased him in high school. Upon

evaluation, the doctor found Plaintiff's long and short-term memories to be fair and his immediate recall to be poor. He found Plaintiff's process of thinking to be logical but affected by his level of intellectual functioning. Plaintiff exhibited difficulty with reading and reading comprehension. Judgment and insight were poor based on clinical history. Dr. Arbona diagnosed Plaintiff with mild mental retardation. He recommended that Plaintiff's mother obtain assistance to help Plaintiff learn social and basic living skills. In his Medical Source Statement, Dr. Arbona assessed Plaintiff with marked limitations in the ability to understand, remember, and carry out simple instructions. Due to Plaintiff's reported anger outbursts, Dr. Arbona further concluded that Plaintiff was markedly limited in his ability to interact appropriately with co-workers, supervisors, and the public.

### 2. Administrative Hearing Testimony

At the administrative hearing on September 20, 2012, Plaintiff testified that he stopped working because he was fired for forgetting what he was told to do. (R:44) He further stated that he always went with a co-worker on the deliveries, and that they had a list of locations for the deliveries. (R:43) When asked what prevented him from working now, he replied that he did not know. (R:43) Plaintiff stated that he still worked when there were routes to be done. (R:45-46) He stated that he would be able to do the route by himself as long as there was someone else driving. (R:46)

Plaintiff testified that he lived with his parents, and was able to drive "more or less" but did not have a license. (R:44) He related that he did not go to counseling or take medications, and did not use drugs or alcohol. (R:43-44) When asked what he did on a typical day after work, he replied that he played with his nephews, played in baseball games on Sundays, and played video games for

about two hours. (R:45-47) When asked if he helped around the house, Plaintiff testified that he took out the trash, swept, mopped, and cleaned the bathrooms. (R:47) Plaintiff testified that he stopped attending school in the 10th grade because he got into fights with the other students that made fun of him. (R:48) However, he stated that he had no problems getting along with co-workers. (R:48) He testified that he had trouble concentrating after five minutes and had trouble in school with reading, writing, and arithmetic. (R:49) He further related that he has gone to the corner store by himself "every now and then," but would get confused or forget what he was supposed to buy. (R:47-48)

A VE testified at the hearing that Plaintiff did not have any past relevant work. (R:51) The ALJ asked the VE whether work existed for an individual with Plaintiff's age, education, and RFC. (R:51) The VE identified three possible occupations: 1) scaling machine operator; 2) bakery worker, conveyor line; and 3) final assembler. (R:51-52) *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* ("DOT") §§ 521.685-386 (Scaling Machine Operator, light, unskilled, SVP 2), 524.687-022 (Bakery Worker, Conveyor Line, light, unskilled, SVP 2), 713.687-018 (Final Assembler, sedentary, unskilled, SVP 2) (4th Ed., Rev. 1991).

Plaintiff's counsel asked the VE whether the hypothetical individual would be able to maintain such employment if off task more than 20 percent of the day. (R:52) The VE testified that such employment would not be available. (R:52) Counsel also asked whether the individual would be able to maintain such employment if he had to be closely supervised and have his work checked 8 times per day. (R:52) The VE replied that such a scenario almost rose to the level of special accommodations and thus such employment was not available. (R:52)

### 3. The ALJ's Consideration of Plaintiff's Mental Impairments

Plaintiff contends that the ALJ failed to consider all of the limiting effects of his mental impairments in determining his RFC. He alleges that his borderline intellectual functioning, mental retardation, and learning disability cause limitations in areas of attending and completing tasks, acquiring and using information, working without close supervision, and following instructions. He further alleges that his mental impairments also cause limitations in concentration and memory. Based upon the VE testimony, Plaintiff claims that he would not be able to maintain employment. Thus, he argues, the ALJ failed to meet her burden at step 5 of the analysis by relying upon a faulty RFC determination and failing to show that work existed that Plaintiff could perform.

Defendant argues that the ALJ's RFC determination is supported by the medical evidence in the record. Defendant further asserts that in making her decision the ALJ evaluated Plaintiff's credibility and examined any inconsistencies in the record.

Review of the record reveals that the ALJ properly considered the relevant evidence and found that Plaintiff was not as limited as alleged. The ALJ evaluated the medical opinions from the examining doctors and from the state agency physicians and determined that Plaintiff was limited to work that required remembering, understanding, and carrying out simple instructions with reasoning level one. The ALJ also stated that Plaintiff's RFC assessment reflected the degree of limitation she found in the four broad areas of the mental function analysis. (R:24) *See* 20 C.F.R. § 416.920a(c)(3).

The medical evidence of record supports the ALJ's RFC findings. For example, Dr. Schutte diagnosed Plaintiff with borderline intellectual functioning and found that his attention

13

and concentration were in the borderline range, while his reasoning and ability to make adjustments were only moderately impaired. Despite Plaintiff's difficulties reading and writing, Dr. Schutte opined that he could follow simple storylines, follow simple instructions, and carry out simple tasks. Dr. Schutte's findings provide substantial evidence for the ALJ's RFC determination.

The opinion from Dr. Fernandez provides further support for the ALJ's RFC assessment. Dr. Fernandez found Plaintiff moderately impaired in social functioning and moderately to severely impaired in vocational functioning. He noted that during the examination, Plaintiff was cooperative and did not exhibit any signs of non-compliance or anger. Further, although Dr. Fernandez diagnosed Plaintiff with phonological and unspecified cognitive disorders, he found that Plaintiff demonstrated adequate mental control, written and mental arithmetic, visual recall, verbal repetition, written expression, constructional praxis, and practical judgment. The functional limitations found by Dr. Fernandez are consistent with the ALJ's RFC findings.

In addition, the psychiatric examinations of Plaintiff done in connection with his legal proceedings are not inconsistent with the ALJ's decision. Dr. Ramirez found that Plaintiff was restricted to interacting in simple and concrete terms. Dr. Briones determined that Plaintiff's intellectual functioning was below average, but that he had fair judgment and insight. At that time, Dr. Briones concluded that Plaintiff did not have a fully rational or factual understanding of the legal proceedings against him and was not sufficiently able to consult with his attorney to assist in his defense. However, by the time of the examination by Dr. Schutte, Plaintiff was able to communicate effectively and was only moderately impaired in his ability to make personal, social, and occupational adjustments.

The ALJ considered the opinions of the state agency medical consultants and attributed great weight to them. State agency medical and psychological consultants are highly qualified physicians who are also experts in Social Security disability evaluation. *See* 20 C.F.R. § 416.927(e)(2)(i). Dr. Snapp determined that Plaintiff had mild limitations in the areas of daily living activities and social functioning and moderate limitations in concentration, persistence, or pace with no episodes of decompensation. He concluded that Plaintiff could understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in the work setting. His conclusions were affirmed by state agency physician Dr. Posey, and further support the ALJ's findings.

With regard to the opinion of Dr. Arbona, the ALJ found it conclusory, based primarily upon other evaluations and on interviews with the Plaintiff and his mother, and sought in an attempt to obtain a formal diagnosis of Plaintiff. Because the ALJ found little explanation or objective findings to support Dr. Arbona's opinion, and found it inconsistent with other record evidence, the ALJ attributed no weight to the opinion. As the factfinder, the ALJ has the responsibility of weighing the evidence and may determine which medical opinions are most supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

In addition to reviewing the medical evidence, the ALJ examined Plaintiff's testimony and alleged limitations and found them not fully credible. She noted that Plaintiff worked even with his alleged impairments. (R:29) Also, although Plaintiff testified that he became confused and forgetful when shopping or at work, he reported to the physicians having no difficulties shopping alone or remembering tasks at work. (R:45, 47-49, 246, 268, 270) The ALJ also noted that Plaintiff

had not sought treatment for his impairments, and that the record was devoid of medical records from any treating provider. (R:29) Further, Plaintiff testified that he did not take any medication or go to counseling. (R:43-44)

Thus, review of the record demonstrates that substantial evidence supports the ALJ's RFC finding. By limiting Plaintiff to simple, routine tasks with reasoning level one, the ALJ incorporated those mental limitations supported by substantial evidence, including problems with concentration, attention, memory, and intellectual functioning. *See Kight v. Colvin*, No. 3:12-CV-4920-BF, 2014 WL 1281049 at *3 (N.D. Tex. Mar. 31, 2014) (ALJ's RFC determination limiting plaintiff to jobs with reasoning level one or two reasonably incorporated mental functional limitations, including moderate deficiencies in concentration, persistence, or pace, resulting from plaintiff's borderline intellectual functioning and other severe mental impairments).

Further, the ALJ's step five determination that other work was available is properly supported with substantial evidence. At the hearing, the ALJ presented a hypothetical question to the VE incorporating those limitations recognized by the ALJ in her RFC findings and asking whether jobs existed that could be performed by an individual with those limitations. In response, the VE identified three job descriptions that could be performed. All three jobs included a reasoning level of one, requiring that the individual carry out simple instructions. Therefore, they were consistent with and not in excess of the ALJ's RFC finding. Consequently, the testimony from the VE regarding other available work provides substantial evidence in support of the ALJ's finding. Moreover, Plaintiff has not shown, through objective evidence or otherwise, any functional limitations resulting from his mental impairments beyond those assessed in the ALJ's RFC determination. Consequently, Plaintiff's argument is unavailing.

## V. CONCLUSION

Accordingly, based upon a review of the evidence, the Court finds that the ALJ's RFC determination comports with relevant legal standards and is supported by substantial evidence. Therefore, Plaintiff's assertions of error are without merit. Based on the foregoing, the Court hereby ORDERS that the decision of the Commissioner be AFFIRMED consistent with this opinion.

SIGNED and ENTERED on May 18th, 2016.

**LEON SCHYDLOWER**
**UNITED STATED MAGISTRATE JUDGE**